IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-41244
Summary Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ANTHONY FORD,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:97-CV-127

_____

January 19, 1999

Before JOLLY, SMITH, and WIENER, Circuit Judges.

PER CURIAM:[*]

Anthony Larry Ford, #04980-78, pleaded guilty to possession
with intent to distribute cocaine base in violation of 21 U.S.C.
§ 841(a)(1). He was sentenced to 108 months' imprisonment. He did
not file a direct appeal. He has now filed this petition for
habeas relief under 28 U.S.C. § 2255.

This court granted a certificate of appealability (COA) on the
question whether the district court abused its discretion in
denying him an evidentiary hearing on his claim of ineffective
counsel. United States v. Ford, No. 97-41244 (5th Cir. Jun. 18,

_____

[*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1998)(unpublished).  The case is now before the court for decision.

Ford contends that an evidentiary hearing is required because his verified allegations contradict the assertions made by his counsel in counsel's affidavit.  He contends that counsel was ineffective for 1) failing to object to the quantities of drugs foreseeable to him; 2) failing to call defense witnesses at sentencing relating to those quantities; 3) failing to consult with him on the presentence report ("PSR") as to those quantities; and 4) failing to file a notice of appeal upon his request challenging the quantities of drugs attributable to him.  He contends that the record does not conclusively refute his allegations and that the district court erred in not granting him an evidentiary hearing to establish his claim.

Therefore, to determine whether we should remand this case for a hearing to allow Ford to try to prove his allegations of ineffective counsel, we turn to examine whether, if his allegations are proved, he would be entitled to relief.

Our review of the record persuades us that there is no need to remand for an evidentiary hearing because, even assuming his specific allegations of counsel's failure to act are established, his ultimate claim of ineffective counsel is meritless because there is no showing of prejudice.  At the bottom of Ford's case and its many allegations is the single point:  that his sentence is based on greater quantities of drugs than should have been attributable to him.  The probation officer calculated Ford's base

offense level at 32, based on 78.18 grams of cocaine base.  The probation officer stated that Ford was responsible for the amount of cocaine base in his count of conviction and for the amount considered as relevant conduct as described in the offense conduct section of the PSR.  At least 50 grams were needed to place him at the 32 level.  Id.; U.S.S.G. § 2D1.1(c)(4).

According to the offense conduct section of the PSR, as part of an investigation of sales of crack from a residence at 1501 Francis Lane in Plano, Texas, undercover officer Paul Cogwell began making undercover buys of cocaine base from the various defendants in this case on April 1, 1994.  The buys continued until the defendants were arrested on August 31, 1994.  Terry Pippens was considered to be the leader of the drug conspiracy.  All defendants were operating out of the same residence and knew each other.  Three of the defendants were arrested on August 25, 1994, and were found to be in possession of 59.25 grams of cocaine base.  On May 4, 1994, several of the defendants pooled their money to buy 12.5 grams of crack.  Cogwell observed Ford and another defendant, Ronald Pippens, intimidate crack cocaine customers.  After the customers had paid, Ford and Pippens would threaten the customers, who would leave the crack they had just bought.

Between April 21 and August 17, 1994, 111 undercover buys were made, 106 of which were crack buys.  Thirty-four of the crack transactions involved the defendants.  A total of 78.18 grams of crack cocaine was bought by Cogwell or seized from the defendants

when arrested.

The probation officer noted that this 78.18 grams should be considered as relevant conduct pursuant to § 1B1.3 for almost all of the defendants. According to Cogwell's observations, the defendants, who were family-related,[1] pooled their money and gave it to either Terry Pippens or Ford for the purchase of cocaine from a supplier in Dallas. When Ford and Pippens returned to the crack house, the group would decide how the drugs would be sold that day and would designate who would do the selling and who would act as lookouts. The conspirators were physically present at the crack house on a regular basis, were involved in the sale of crack cocaine, and were aware that crack was being sold by the others.

Ford did not object to the PSR's recommended use of 78.18 grams of crack to determine his base offense level. The district court adopted the finding of the PSR. Ford argues that his counsel was ineffective for failing to object. He claims that his counsel did not review the PSR with him or consult with him on what objections should be made. Ford's contention is that he withdrew from the conspiracy after his earlier arrest on a parole warrant and should be held accountable for amounts of cocaine distributed by the conspiracy after his arrest on June 28, 1994.

To prevail on his claim of ineffective assistance of counsel, Ford must show 1) that his counsel's performance was deficient in that it fell below an objective standard of reasonableness; and 2)

---

[1]Ford's wife's maiden name was Pippens. PSR ¶ 24.

that the deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687-94 (1984). In order to show prejudice, Ford must demonstrate that counsel's errors were so serious as to "render[] the result of the trial unreliable or the proceeding fundamentally unfair." Lockhart v. Fretwell, 506 U.S. 364, 372 (1993). A failure to establish either deficient performance or prejudice defeats the claim. Strickland, 466 U.S. at 697. In evaluating allegations of attorney error during a noncapital sentencing proceeding, the court considers whether there is a probability that, but for counsel's deficiency, the defendant's sentence would have significantly less harsh. United States v. Acklen, 47 F.3d 739, 742 (5th Cir. 1995); Spriggs v. Collins, 993 F.2d 85, 88 (5th Cir. 1993).

Ford argues that the claim underlying his ineffective counsel claim--that the district court erred in using the 78.18 grams as relevant conduct because he withdrew from the conspiracy--is evidenced by several letters he wrote to his wife while in prison after his arrest on June 28, 1994. Ford allegedly[2] wrote to "Big Legs" on July 6, 1994, and asked her to tell "Pip" that "I am out of that b----s---, don't ask me what just tell him he knows what I am talking about." Ford does not contend that the district court could not have found the 78.18 grams to be relevant conduct absent

---

[2]The letters attached to his § 2255 motion, allegedly sent by Ford to his wife, are originals handwritten in pencil and show no evidence of having been folded and mailed. R. 1, 118-20. Ford does not allege that he copied his submissions from the originals.

his claim of withdrawal from the conspiracy.

Ford's arrest alone would not have prevented him from being held responsible for amounts of drugs distributed by the conspiracy. See Puig-Infante, 19 F.3d at 945 (a defendant's incarceration by itself does not constitute withdrawal from a conspiracy). The defendant must demonstrate that he had committed affirmative acts inconsistent with the object of the conspiracy, communicated in a manner reasonably calculated to reach conspirators. Id. Applying this law, this court held in the case of Robert Joe Kimble, one of Ford's codefendants, that Kimble's arrest did not preclude holding him responsible for the amount of drugs distributed after his arrest. See United States v. Kimble, No. 95-40205 (5th Cir. Sept. 20, 1995)(unpublished). However, the opinion in Kimble does not refer to any argument by Kimble that he had taken affirmative steps to withdraw.

Ford makes such an argument. Even if one believes Ford's allegations either that counsel did not consult with him on the PSR, or that Ford told counsel that he had withdrawn and counsel failed to make the objection, his letters are not a sufficient demonstration of a withdrawal to support his claim. His meaning in his letters is known only to him. He specifically told his wife not to ask what it was about. Ford asked "Big Legs" to tell "Pip" "if" she saw him in Dallas. There was no specific time frame for her to pass this information on to "Pip." Again on July 19, 1994, Ford asked his wife if she had seen Pip and whether she had told

him "what I said forget that s---- count me out he knows what I am talking about." Unfortunately for Ford, the letters do not show what he is talking about. Finally, on July 27, 1994, Ford states in his letter to Mary that he thanks her for telling her "brother what I said." These letters--which are the only evidence, assuming they are authentic, that would tend to show that Ford withdrew from the conspiracy--are not a sufficient demonstration of affirmative acts inconsistent with the object of the conspiracy communicated in a manner reasonably calculated to reach conspirators. Puig-Infante, 19 F.3d at 945. Thus, counsel cannot be considered to have been ineffective in the Strickland sense for failing to make what ultimately is a meritless sentencing objection or failing to appeal the sentence that otherwise is fully supported by the record. Consequently, there is no need to remand this case for an evidentiary hearing on his ineffective counsel claim. The district court reached the correct result and is therefore

A F F I R M E D.